Dear Mr. Pitre:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the St. Landry Parish Sheriffs Office, you have asked for our opinion on the following question:
 Is the St. Landry Parish Sheriff legally allowed to enter into an intergovernmental agreement transferring a portion of its share of the slot machine proceeds to the Opelousas Police Department for law enforcement purposes only?
Your request indicates the Louisiana Legislative Acts No. 721 of 1997 and No. 42 of 1998 allowed, in part, for St. Landry Parish Government to levy a tax not to exceed four (4%) percent of the weekly slot machine proceeds at the Evangeline Downs Racetrack. Specifically, Louisiana Revised Statute 27:391 provides the following:
 § 391. Authorization of local governing authority to tax
 A. Except in Bossier Parish and Calcasieu Parish, the local governing authorities in the parish in which the licensed eligible facility is located may levy a tax not to exceed four percent in the aggregate of the weekly taxable net slot machine proceeds.
Pursuant to this statutory authority, a tax was levied. Thereafter, the St. Landry Parish Government passed and then amended Ordinance 1998 #5 which allocated and distributed the four percent (4%) racetrack tax among the various local public bodies as follows:
1. Parish Government 55.0%
2. St. Landry Parish Airport 1.5%
3. Coroner 1.5%
4. Economic Development 5.0%
5. District Attorney 3.5%
6. Registrar of Voters 1.5%
 7. Sheriff's Office 6.0% *Page 2 
8. St. Landry Parish Municipal Association 21.0%
9. St. Landry Parish Judicial System 2.0%
10. St. Landry Parish Clerk of Court 1.5%
11. St. Landry Parish Assessor's Office 1.5%
Your request goes on to indicate that at the time of passing both the state and local provisions, the racetrack was physically located outside the municipal boundaries of the City of Opelousas and therefore, the St. Landry Parish Sheriff's Office provided law enforcement coverage to the racetrack. Subsequently, the racetrack was annexed into the City of Opelousas. Accordingly, the Opelousas Police Department is now obligated to provide law enforcement services to the facility.
The question presented must be addressed in light of Article VII, Section 14 of the Louisiana Constitution, which provides:
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivisions shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
Art. VII, Sec. 14 clearly prohibits the donation of public funds. The Louisiana Supreme Court has recently announced a new standard for determining whether Art. VII, Sec. 14 is violated. In Board of Directorsof the Industrial Development Board of the City of Gonzales, Louisiana,Inc. v. All Taxpayers, Property Owners, Citizens of the City of Gonzales,938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the "Cabela's" case) the Court found that "(Art VII) § 14(A) is violated when public funds or property are gratuitously alienated." Thus, if the transfer of a portion of its share of the slot machine proceeds to the Opelousas Police Department amounts to a gratuitous alienation of funds, such payments would be an unconstitutional donation pursuant to Art. VII, Sec. 14.
Essentially, we gleaned three things from the Cabela's case when it comes to determining whether an expenditure is gratuitous. First, it is evident that there must be a public purpose when expending funds. Second, the transaction must be looked at as a whole, and can't appear to be gratuitous on its face. Third, public entities must have an expectation of receiving something of value when expending public funds.
Although it is clear that providing law enforcement services qualifies as a public function, we are of the opinion that the proposed transaction, taken as a whole, appears to be merely gratuitous. Our review of Louisiana Revised Statute 27:391 fails to reveal a legal requirement that the Opelousas Police Department receive a share of the racetrack tax. Similarly, Ordinance 1998 #5 fails to make a distribution of any of the racetrack proceeds to the Opelousas Police Department.
The proposed agreement would have the St. Landry Sheriffs Office transfer funds to the Opelousas Police Department to aid in the police department's law enforcement *Page 3 
efforts. Clearly, such an expenditure qualifies as a public purpose and without question provides a public benefit. However, based on the information provided to our office, it is equally clear that the St. Landry Parish Sheriff's Office receives nothing in return for this expenditure or transfer.
As indicated in your request, the City made the decision to annex the racetrack, separate and apart from the passage of both the state and local provisions concerning the 4% racetrack tax. As a result, the City is tasked with the responsibility of providing law enforcement services to the facility. Although the racetrack facility is located within the boundaries of St. Landry Parish, and the Sheriffs presence is authorized, the ultimate responsibility for providing law enforcement services at the facility falls to the Opelousas Police Department. Although the parish has the authority to amend Ordinance 1998 #5 to include the Opelousas Police Department in the distribution of the racetrack proceeds and thus create a legal obligation on the part of the Parish, until such an amendment is accomplished, the proposed expenditure or transfer amounts to a prohibited donation under Article VII, Section 14 of the Louisiana Constitution.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY: ________________________ MICHAEL J. VALLAN Assistant Attorney General
 CCF, JR/MJV/crt